UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel. KEVIN MALONE, ) ) ) Petitioner, ) ) v. ) ) ALAN UCHTMAN, Warden, Menard ) Correctional Center, ) ) Respondent. ) | No. 05-C-2796 Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

A Cook County jury found Petitioner, Kevin Malone, guilty of two counts of first degree murder in the shooting deaths of Carl Barbee and Jerome Coleman, and the trial court sentenced him to life imprisonment for each murder, with sentences to be served concurrently. (R. 22-3, Answer, Ex. A, App. Ct. Order at 1.) On May 10, 2005, Malone filed a petition for a writ of habeas corpus claiming that his continued custody violates the United States Constitution (R. 1, Pet. at 5), and on September 2, 2005, Malone filed a motion for appointment of counsel, (R. 20). In his habeas petition, Malone alleges that his constitutional rights were violated because: (1) his statement to the police was involuntary as it was the result of undue coercion and false promises and was not preceded by *Miranda* warnings; (2) the trial court improperly permitted expert testimony on gangs by officer Michael Cronin; (3) the trial court improperly instructed the jury on Malone's "other conduct" and gang affiliation; (4) the trial court erred when it did not give the jury an accomplice instruction; (5) the sentencing judge imposed a mandatory natural life sentence without considering mitigating factors; (6) Malone was not proven guilty beyond a reasonable doubt; (7) the trial court inadequately conducted *voir dire* by failing to exclude jurors

with a bias against street gangs; (8) Malone's trial counsel was ineffective; and (9) Malone's appellate counsel was ineffective. (R. 1, Pet. at 5-12.) Malone alleges that his trial counsel was ineffective for failing to conduct an adequate *voir dire* to ensure jurors with a bias against street gangs were excluded and for failing to call Assistant State's Attorney Kevin Simon to testify at the suppression hearing. Malone argues that his appellate counsel on direct appeal was ineffective for failing to raise any issues which were later raised in Malone's petition for post-conviction relief and for failing to raise any issues related to the propriety of the trial court's jury instructions.

Despite these extensive allegations of constitutional violations, Malone's petition for federal habeas relief is denied. (R. 1.) Most of Malone's claims are not cognizable on federal habeas review, and those that are have been procedurally defaulted. Malone's motion for appointment of counsel, (R. 20), is also denied, as he has capably detailed nine grounds for relief, and appointed counsel could not cure the fundamental deficiencies in Malone's petition.

I. **Factual History**

In reviewing a petition for habeas relief, this Court presumes that the state court's factual determinations are correct unless the petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). This Court therefore adopts the recitation of the facts set forth in the Illinois Appellate Court's order affirming Malone's conviction and sentence, in *People of the State of Ill. v. Malone*, 99-4011 (Ill. App. Ct. 1st Dist. July 13, 2001). (R. 22-3, Answer, Ex. A.) The Appellate Court set forth the facts as follows.

2

### A. The November 7, 1996 Shooting

At trial, Malone testified that he was a member of as street gang known as the Traveling Vice Lords. (*Id.* at 5.) On October 16, 1996, three weeks before the incident for which he was charged, Malone was shot by a member of the Unknown Vice Lords, a rival gang, and the bullet remains lodged in his lower back. (*Id.* at 6.) Afterwards, Malone heard that a rival street gang known as the Unknown Vice Lords were to make a payment to a senior Traveling Vice Lords member named Prince to avoid him seeking revenge for Malone's shooting. (*Id.*)

On November 7, 1996, Prince told Malone and Malone's co-defendant—a more senior gang member named Rommell Winters—to see if the rival gang members "had the money" for Prince. (*Id.* at 6.) Malone got into Winters' car, and Winters drove into an alley where Malone retrieved a gun from a garbage can. (*Id.*) At the corner of Homan and Adams in Chicago, they saw Carl Barbee and Jerome Coleman in a black Chevy, and Winters told Malone to "go and see if they got the money." (*Id.*) Malone took the gun and approached Barbee and Coleman and, allegedly thinking they might try to hurt him, Malone "just started shooting" into the car, hitting Barbee and Coleman in the back. (*Id.* at 6-7.) Malone returned to Winters' car and they drove away. (*Id.*)

Dwayne Mobley's trial testimony corroborated this account. Mobley was a member of the Traveling Vice Lords. He testified that on November 7, 1996, he followed Winters' car into Unknown Vice Lords territory, which was following a black Chevy containing two men. (*Id.* at 4.) When the driver of the Chevy attempted to make a U-turn to approach Winters' and Mobley's vehicles, Winters drove in front of the Chevy and stopped. (*Id.*) Malone got out of Winters' car and shot seven times into the driver's window. (*Id.*) Dushae Nesbitt, who was

3

traveling with Mobley, also gave testimony consistent with Mobley's account. (*Id.*)

B. **Events Surrounding the Arrest**

Debbie Malone, Kevin Malone's mother, testified at trial that four or five police officers came to her house on April 5, 1997 at 4 a.m., handcuffed her son and took him to the police station. (*Id.*) The officers told her she could not accompany her son, and she said she was not allowed to see her son until midnight. (*Id.*)

Malone gave a statement to police admitting that he shot Barbee and Coleman. He alleges that his inculpatory statement to the police was involuntary, however, because he had been "pressured" and "told that he could go home if he signed the papers written by Assistant State's Attorney Kevin Simon." (*Id.* at 2.) At the pre-trial hearing on his motion to suppress, Chicago police detective Michael Duffin testified that he and detective Terry O'Connor arrested Malone at his home at about 4:30 a.m. on April 5, 1997. (*Id.*) About two hours later, Malone was identified in a lineup as a participant in the November 7, 1996, shooting deaths of Barbee and Coleman. (*Id.*) Duffin testified that he read Malone his *Miranda* rights before questioning him and never told Malone that he could leave if he signed papers. (*Id.*) Chicago police detective Ralph Vucko testified that he and detective David March were present when Simon spoke with Malone on April 5 and April 6, and that no promises were made to Malone that he could go home if he signed anything; however, Simon spoke to Malone alone at some point on April 6. (*Id.*) Vucko was present when Simon wrote down a statement from Malone, and Malone signed each page without protest. (*Id.* at 2-3.) The trial court found that no promise had been made to Malone that he would be released. (*Id.* at 3.)

At trial, Simon testified that at about 3:15 p.m. on April 6, 1997, Malone agreed to speak

4

with him and have Simon write out his statement. (*Id.*) Simon wrote a nine-page statement and read the statement to Malone, who signed each page. (*Id.* at 3, 7.) The statement said that on November 7, 1996, Malone fired 10 or 11 shots into a car containing members of the Unknown Vice Lords, a rival gang of the Traveling Vice Lords, to which Malone belonged. (*Id.* at 3.) The statement also said that no threats or promises were made to Malone in exchange for his statement. (*Id.*) Malone testified at trial that he was handcuffed at the police station and that he asked Simon if he could speak to his lawyer or his mother. (*Id.* at 6.) Malone claimed that Simon did not write everything down that Malone told him, and Malone signed each page of the statement thinking that Simon would make the corrections later. (*Id.* at 6-7.)

### C. Gang Testimony at Trial

At trial, Chicago police officer Michael Cronin testified that he was a gang specialist whose duties included long-term investigations of gangs and identification of gang members and gang hierarchy, specializing in different factions of the Vice Lord nation. (*Id.*) Over defense objections, the trial court allowed Cronin to testify as an expert on gangs. (*Id.* at 4-5.) Cronin testified, among other things, that when gangs are at war, a member of one gang will shoot a member of a rival gang in retaliation for an earlier attack. (*Id.* at 5.)

## II. Procedural History

At the close of evidence at trial, the jury found Malone guilty of the first degree murders of Barbee and Coleman. (*Id.* at 8.) The trial court sentenced Malone to life imprisonment for each murder, with sentences to be served concurrently. (*Id.*)

On direct appeal, Malone raised the following claims: (1) the trial court erred in denying his motion to suppress his statement because Malone was told that if he signed the statement he

could leave the police station; (2) a Chicago police officer's testimony regarding gang culture was improper; (3) the trial court erred in instructing the jury regarding its consideration of conduct by Malone "other than that charged in the indictment," which Malone contends referred to his gang membership and the fact that he had been shot three weeks prior to the deaths of Barbee and Coleman; and (4) the trial court erred in refusing the defense's request to instruct the jury on the weight it should give the testimony of an accomplice to the crime. (R. 22, Answer, Ex. A, App. Ct. Order at 1-2.) After the appellate court affirmed his conviction and sentence, Malone filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, raising the same issues. (*Id.*, Answer, Ex. D, PLA.) Malone's PLA was denied. (*Id.*, 12/27/01 Sup. Ct. Order.)

Malone next filed a post-conviction petition with the Circuit Court of Cook County alleging that his constitutional right were violated by: (1) an improper mandatory natural life sentence; (2) failure to prove guilt beyond a reasonable doubt; (3) insufficient *voir dire* questioning regarding gang bias; and (4) ineffective assistance of appellate counsel. (*Id.*, Ex. F, Pet. for Post-Conviction Relief.) This petition was denied as without merit. (*Id.*, Ex. G.)

The public defender of Cook County, who represented Malone, filed a motion for leave to withdraw as appellate counsel under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), stating that there were no meritorious issues on appeal. (*Id.*, Ex. H, *Finley* Mot.) Malone responded to the *Finley* motion, agreeing that the first three issues he raised in his post-conviction opinion were defaulted, but blaming his appellate counsel for failing to raise those issues on direct appeal. (*Id.* Ex. I, *Finley* Resp. at 2.) Malone's only argument for considering these defaulted issues is the mistaken belief that "fundamental fairness" dictates considering issues that were not previously

considered. (*Id.*) The appellate court found no issues of arguable merit, affirming the judgment of the Circuit Court of Cook County and granting the public defender's motion for leave to withdraw as counsel. (*Id.*, Ex. J, *Finley* Order at 2.) Malone filed a PLA, arguing only that his appointed appellate counsel was ineffective. (*Id.*, Ex. K, Post-Conv. PLA at 1.) The Illinois Supreme Court denied Malone's post-conviction PLA. (*Id.*, Ex. M, 11/24/04 Sup. Ct. Order.)

## LEGAL STANDARDS

The Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available state remedies and fairly presented all of the claims in his habeas petition to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000). "Federal habeas relief is available only when a petitioner has given the state courts a full and fair opportunity to review a claim, when there is cause and prejudice for the failure to raise the claim in state court or when the default would lead to a fundamental miscarriage of justice." *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996) (citations omitted).

To avoid default, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, "one complete round" of appellate review includes appellate court review as well as a petition for discretionary review in the Illinois Supreme Court. *Id.* The Seventh Circuit has held that the

*Boerckel* procedural default rule "applies with equal force in a case . . . on collateral review." *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

Even where a petitioner has overcome all procedural hurdles, a federal court can only grant an application for habeas review if it meets the requirements of 28 U.S.C. § 2254(d). Under this standard, the petitioner must show that the State court's proceedings: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See also Woodford v. Visciotti*, 537 U.S. 19, 21 (2002) (*per curiam*). Under this deferential standard, the Court must "attend closely" to the considered decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000).

## ANALYSIS

### I. Procedural Default

The Seventh Circuit uses the term "procedural default" to refer to the two separate but closely related circumstances where a federal court is barred from considering the merits of a petitioner's habeas claim: "(1) [when] that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds[;] or (2) [when] the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004) (citations omitted). The second type of procedural default occurs where a habeas petitioner has exhausted his state court

8

remedies without properly asserting his federal claim at each level of state court review. *Lewis*, 390 F.3d at 1025 (citations omitted).

A federal habeas petitioner may proceed on a claim in the face of a procedural default where he "can demonstrate both cause for and prejudice stemming from that default . . . *or* he can establish that the denial of relief will result in a miscarriage of justice[.]" *Id.* at 1026 (emphasis in original) (citations omitted). Cause exists where the petitioner can show that some kind of external factor prevented him from presenting his federal claim to the state courts. *Id.* Prejudice exists where "the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). A petitioner may overcome procedural default based on a fundamental miscarriage of justice if no reasonable juror would have found him guilty of the offense but for the constitutional errors he ascribed to the state court. *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995).

### A. Claims 5, 6, and 7

Claims 5, 6, and 7 of Malone's petition for habeas relief are procedurally defaulted, because although he raised these claims in his post-conviction petition, (R. 22, Answer, Ex. F, Pet. for Post-Conv. Relief), he failed to include them in his brief on direct appeal or in his PLA at the post-conviction stage. *Lewis*, 390 F.3d at 1025. As explained above, in Malone's response to his public defender's *Finley* motion and in his post-conviction PLA, he agreed that these three

9

issues—improper mandatory natural life sentence;[1] failure to prove guilt beyond a reasonable doubt, and failure to exclude jurors with an anti-gang bias due to insufficient *voir dire*—in his post-conviction motion were defaulted. (R. 22, Answer, Ex. I, Resp. to *Finley* Mot. at 2.) Malone blames his appellate counsel for failing to raise these issues, but this does not avoid the procedural default, as "the fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise." *Lewis*, 390 F.3d at 1026.

Though this Court reviews Malone's petition with extra caution given his *pro se* status, Malone has not overcome the procedural default. Malone gives no explanation for his failure to pursue these claims through a complete round of the state appellate or post-conviction process except that his appellate attorney failed to raise these issues. As explained above, this is not sufficient to overcome the default as to these underlying issues, and without some explanation of an objective external factor that prevented him from fully pursuing the claim, this Court cannot find that there was cause for his procedural default. *Lewis*, 390 F.3d at 1026. Malone also cannot show that procedural default of these claims will result in a fundamental miscarriage of justice because, as the appellate court explained, the jury heard a long list of evidence demonstrating that Malone's shooting of Barbee and Coleman was not in self-defense, and thus a

---

[1] Moreover, Malone's argument that his natural life sentence is unconstitutional is not cognizable on federal habeas review because state sentencing determinations that fall within appropriate statutory limits are beyond the scope of federal review. *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994). Section 730 ILCS 5/5-8-1 (a)(1)(c)(ii), under which Malone was sentenced, states that the court shall sentence the defendant to a term of natural life imprisonment irrespective of the defendant's age at the time of the commission of the offense, if the defendant is found guilty of murdering more than one victim.

10

reasonable juror would not likely have found that Malone was innocent even without the procedural default. (R. 22, Answer, Ex. A, App. Ct. Order at 1-8.) Thus, Malone did not pursue these claims in "one complete round" of the post-conviction process, and, as a result, he is procedurally barred from pursuing that claim in his federal habeas petition. *Boerckel*, 526 U.S. at 845.

### B. Claim 8: Ineffective Assistance of Trial Counsel

Malone's ineffective assistance of trial counsel claims are procedurally defaulted because he did not raise these allegations at any level of the state courts. *Mahaffey v. Schomig*, 294 F.3d 907, 919 (7th Cir. 2002). Malone has not alleged any cause or prejudice or fundamental miscarriage of justice that saves this claim from procedural default.

## II. Claims 2, 3, and 4: Errors of State Law

Errors of state law are not cognizable in a petition for habeas corpus unless they result in the violation of a constitutional or federal right. *Burt v. Uchtman*, 422 F.3d 557, 567 (7th Cir. 2005) (citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Here, Malone raises three errors of state law that were not procedurally defaulted: (a) Claim 2, that the trial court erred when it allowed Officer Cronin to testify as an expert witness and offer testimony about gangs; (b) Claim 3, that the trial court erred when it instructed the jury on his "conduct" and gang affiliation without accompanying limiting instructions; and (c) Claim 4, that the trial court erred when it refused to give the jury an accomplice instruction.

"Because a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review." *Perruquet*, 390 F.3d at 511-12 (citing *McGuire*, 502 U.S. at 71-72). "However, a state defendant does have a

11

Fourteenth Amendment due process right to a fundamentally fair trial," *id.* at 511, and Malone argues that the trial court's rulings deprived him of this right, as well as his due process rights under the Fifth and Sixth Amendments. In his Petition, Malone does little more than cite to his Fifth, Sixth, and Fourteenth Amendment right to due process to establish that the trial court's rulings violated his constitutional rights. (R. 1, Pet. at 6-8.) Malone claims that the expert testimony on gangs and the broad jury instruction on considering "other conduct" incited the jury against petitioner and thus deprived him of a fair trial. (*Id.* at 6-7.) He further argues that he was deprived of his right to a fair trial because the trial court did not give an accomplice instruction as to fellow gang member Dwayne Mobley. (*Id.* at 7-8.) Finally, Malone argues that these alleged state court errors likely resulted in the conviction of an innocent person, because Malone claims he shot Barbee and Coleman in self defense. (R. 27, Reply at 7.)

As Malone is without counsel, his habeas petition is entitled to a liberal construction. *Perruquet*, 390 F.3d at 512. Given this circumstance, and in an abundance of caution, the Court finds that Malone's petition—and state court appellate briefs—contained enough detail to describe a federal constitutional claim. *See id.* As this Court finds that Malone's petition draws enough of a connection between his right to due process and the trial court's alleged evidentiary and instructional errors to render his claim cognizable on habeas review, this Court must now determine the merits of Malone's claims; that is, whether "the state court committed an error so serious as to render it likely that an innocent person was convicted." *Id.* at 511.

### A. Claim 2: Gang Testimony

The trial court did not err when it allowed Officer Cronin to testify as an expert witness and offer testimony about gangs. The appellate court applied Illinois law and found that the trial

12

court properly admitted Officer Cronin's testimony. Under Illinois law, police testimony regarding gang activity is admissible if the officer qualifies as an expert, the testimony is relevant, and the prejudicial effect of the evidence does not outweigh its probative value. *People v. Cruzado*, 299 Ill. App. 3d 131, 141, 700 N.E.2d 707 (1st Dist. 1998). Evidence of other crimes or conduct is admissible to prove motive or intent, and the admissibility of evidence is within the sound discretion of the trial court. *People v. Heard*, 187 Ill. 2d 36, 718 N.E.2d 58 (1999). Gang membership in particular is relevant when it is related to the crime charged. (R. 22, Answer, Ex. A, App. Ct. Order at 13-14 (citing *People v. Strain*, 194 Ill. 2d 467, 477, 742 N.E.2d 315, 321 (2000); *People v. Matthews*, 299 Ill. App. 3d 914, 923, 702 N.E.2d 291, 297 (1998).)

The Illinois Appellate Court affirmed the trial court's decision to admit Officer Cronin's testimony after carefully applying these *Cruzado* factors to the facts of this case. (R. 22, Answer, Ex. A, App. Ct. Order at 11-12.) The relevance of Malone's gang membership as to his motive to commit the crime charged is clear: Malone was shot by rival gang members just weeks before he shot Barbee and Coleman, who were members of the rival gang. (*Id.* at 3.) Officer Cronin's qualifications as an expert are also clear: he had 17 years of experience with gang culture in general and the Vice Lords in particular, and he was then employed as a "gang specialist," a role in which he interviewed about 50 gang members a week. (*Id.* at 12.) Furthermore, the prejudicial effect of the evidence did not outweigh its probative value, as the gang shooting of Malone was the primary motive for the crimes of which Malone was convicted. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, __ U.S. __, 126

13

S. Ct. 602, 604 (U.S. 2005).[2] Thus, this Court finds the admission of Officer Cronin's expert testimony did not violate Malone's due process rights.

### B. Claim 3: "Other Conduct" Jury Instruction

Neither did the trial court err when it instructed the jury to consider Malone's "other conduct" without accompanying limiting instructions to prevent the jury from considering "unrelated" gang evidence. (R.1, Pet. at 7.) Over Malone's counsel's objection, the trial court gave the following jury instruction:

> Evidence has been received that the defendant has been involved in conduct other than that charged in the indictment. This evidence has been received on the issues of the defendant's motive and intent and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given to this evidence on the issues of motive and intent.

(R. 22, Answer, Ex. A, App. Ct. Order at 14.)

The Illinois Supreme Court has held that a limiting instruction need not accompany the admission of other-crimes evidence in order to ensure that the jury does not use the evidence for the improper purpose of forming a negative opinion of the defendant. *Heard*, 187 Ill.2d at 60, 718 N.E.2d at 72. While the inclusion of such a limiting instruction may be sound practice, the trial court's failure to do so does not mandate reversal. *Id.* at 61, 72. The trial court here applied the same instruction given in *Heard*, that the jury should consider the evidence of Malone's other conduct (that he was a gang member and was shot by rival gang members) for purposes of

---

[2] Even if the state committed an evidentiary error, it was harmless because the trial was not rendered so unfair that an innocent person was convicted in view of other properly-admitted evidence which incriminated Malone. Eyewitnesses Nesbitt and Mobley testified that Malone was the gunman, and Malone implicated himself in his statement to police. (R. 22, Answer, Ex. A, App. Ct. Order at 7.)

14

determining motive and intent and only for that purpose. (R. 22, Answer, Ex. A., App. Ct. Order at 16.) Applying *Heard*, the Illinois Appellate Court found that Malone was not denied a fair trial with this jury instruction as to "other crimes" evidence.[3] (*Id.*) Thus, this Court finds that the trial court's instruction on Malone's "other conduct" did not violate Malone's due process rights.

### C. Claim 4: Refusal to Give the Jury an Accomplice Instruction

Finally, Malone argues that his constitutional rights were violated when the trial court refused to give the jury the following instruction: "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." In light of the evidence, however, the trial court properly found—and the appellate court affirmed—that Dwayne Mobley, for whom Malone sought this instruction, was not involved in the offense except as an eyewitness, and thus the court did not give this instruction. (R. 22, Answer, Ex. A, App. Ct. Order at 17-18.)

Whether an accomplice instruction should be given depends on whether the totality of the evidence and the reasonable inferences therefrom "establish probable cause to believe not merely that the person was present and failed to disapprove of the crime, but that he participated in the planning or commission of the crime. (R. 22, Answer, Ex. A, App. Ct. Order at 17 (citing *People v. Harris*, 182 Ill. 2d 114, 144, 695 N.E.2d 447, 462 (1998).) Here, Malone offered no facts to indicate that Mobley was involved in planning the shootings of Barbee and Coleman beyond the fact that Mobley was a member of the Traveling Vice Lord gang as well. (R. 22, Answer, Ex. A,

---

[3]Even if the trial court erred with its instruction, "the ailing instruction by itself [did not] so infect[] the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. In light of the overwhelming evidence which incriminates Malone, any error was harmless.

15

App. Ct. Order at 17.) In addition, Nesbitt (also a Traveling Vice Lord) offered testimony corroborating Mobley's statement that he just followed Winters' car and then drove off after the shooting. (*Id.*) Based on these state court factual and legal findings—to which this Court defers—this Court finds that the trial court did not abuse its discretion in refusing to give a jury instruction on accomplice testimony, and thus the failure to give this instruction did not violate Malone's due process rights.

### III. Review of the Merits

#### A. Claim 1: Malone's Statement to Police

Malone claims that he is entitled to habeas relief because his incriminating statement to police was the product of police coercion and because he did not receive a *Miranda* warning. Although Malone has overcome all procedural hurdles as to this claim—raising it on direct appeal to the Illinois Appellate Court and in his PLA—Malone's claim that his constitutional rights were violated by the failure to suppress his statement fails to meet the requirements of 28 U.S.C. § 2254(d). The Illinois Appellate Court's determination was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d)(1-2). A state court decision is contrary to federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's holding. *Anderson v. Cowen*, 227 F.3d 893, 896 (7th Cir. 2000) (citations omitted).

The appellate court applied the "totality of circumstances" test: the correct test to apply to

determine the voluntariness of confessions by adults and juveniles. *Bridges v. Chambers*, 447 F.3d 994, 997 (7th Cir. 2006). The appellate court considered the evidence presented, if any, of Malone's age, education, mental capacity, physical treatment, the circumstances surrounding his detention, and whether he was advised of his constitutional rights at the time of his interrogation. (R. 22, Answer, Ex. A at 10-11.) Among the other factors, the appellate court found that Malone was advised of his constitutional rights and that despite his age of 16, his statement was voluntary. Given that the court applied the proper test as required by the Supreme Court and the deferential standard of review, this Court finds that the Illinois Appellate Court's decision was not contrary to, or involving an unreasonable application of, clearly established federal law as determined by the Supreme Court. *Bridges*, 447 F.3d at 999.

Nor was the state court's judgment based on an unreasonable determination of the facts. Pursuant to Section 2254(e), this Court presumes that the appellate court's findings of fact are correct. The state court reasonably found that the prosecution witnesses at the suppression hearing provided "uncontroverted" testimony that Malone gave his statement voluntarily and without duress, and that Officers Vucko and Duffin gave credible testimony that Malone was not told he could leave if he signed the statement. (R. 22, Answer, Ex. A, App. Ct. Order at 8-10.) Determinations as to the credibility of witnesses are the special province of the trial court, and this Court is in no position to second-guess the state court's credibility determinations. *Sprosty v. Buchler*, 79 F.3d 635, 643 (7th Cir. 1996). As a result, this Court finds that the appellate court's decision was based on a reasonable application of the underlying facts, and Malone's claim for relief is denied. 28 U.S.C. § 2254(d)(2).

## B. Claim 9: Ineffective Assistance of Appellate Counsel

Lastly, Malone argues that he was denied his Sixth Amendment right to effective assistance of counsel because his counsel on direct appeal failed to raise the claims that were later raised in Malone's petition for post-conviction relief. In order to succeed on a petition for federal habeas relief, the petitioner must show that "[t]he specific ground for ineffectiveness raised in the federal petition [was] raised in the state case." *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998). Contrary to Respondent's arguments, Malone did present the issue that his appellate counsel was ineffective for failing to raise these claims in his post-conviction petition, appeal, and PLA.

Thus, this Court proceeds to the merits of this claim to determine if the Illinois appellate court's denial of Malone's ineffective assistance of counsel claim was either contrary to or involved an unreasonable interpretation of clearly established federal law, and whether the decision rests on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The post-conviction appellate court found that Malone's response to the appellate defender's *Finley* motion raised "no issues of arguable merit." (R. 22, Answer, Ex. J at 2.) This rejection of Malone's ineffective assistance of counsel claim was not contrary to clearly established federal law, nor based on an unreasonable determination of the facts.

Whether an appellate lawyer was incompetent is determined under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Under this test, the petitioner must show that his appellate counsel's performance was both deficient and prejudicial. *Id.* at 687. In reviewing an ineffective assistance of counsel claim, the courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

18

assistance." *Winters v. Miller*, 274 F.3d 1161, 1166 (7th Cir. 2001) (citations omitted). "An appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised." *Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004) (citations omitted). The requisite prejudice exists "only when appellate counsel fails to raise an issue that may have resulted in a reversal of the conviction, or an order for a new trial." *Winters*, 274 F.3d at 1167 (citations and quotations omitted).

Malone's appellate counsel raised four issues on direct appeal. (R. 22, Answer, Ex. A, App. Ct. Order at 1-2.) After those issues were rejected by the appellate court, Malone raised four new issues in his post-conviction petition with the Circuit Court of Cook County—all of which were defaulted except for the ineffective assistance of appellate counsel claim. (*Id.*, Ex. F, Pet. for Post-Conv. Relief.) Malone's appellate counsel was not deficient for failing to raise these three additional issues because counsel is not required to raise every non-frivolous issue on appeal, *Martin*, 384 F.3d at 852, and courts should not second-guess appellate counsel's strategy decisions, *Mason*, 97 F.3d at 893. Moreover, Malone was not prejudiced because, as shown by the post-conviction court's denial of his claims, Malone would likely have fared no better had these claims been raised earlier in his direct appeal. Therefore, Malone is not entitled to habeas relief on any of his claims.

## CONCLUSION

For the reasons set forth above, Malone's petition for a writ of habeas corpus is denied. (R. 1.) Additionally, this Court denies Malone's motion for appointment of counsel. (R. 20.)

ENTERED: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

Dated: August 10, 2006